UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
U.S. LICENSING ASSOCIATES, INC.,           :
                                           :
    Plaintiff,                             :
                                           :          11 CV 4517 (HB)
    - against -                            :
                                           :          OPINION &
THE ROB NELSON COMPANY,                    :          ORDER
                                           :
    Defendant.                             :
-------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

    Before the Court is a motion to dismiss brought by defendant The Rob Nelson Company ("RNC"). The Notice of Motion also seeks leave to change the Defendant's name in the case caption to "The Rob Nelson Company" rather than the "The Rob Nelson Corporation." In the amended complaint, plaintiff U.S. Licensing Associates, Inc. ("USLA") alleges two counts of breach of contract and one count of breach of the implied covenant of good faith and fair dealing in connection with a contract between RNC and USLA entered into in 1992 ("1992 Contract"). For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

    On January 1, 1992, The Jim Bouton Corporation ("JBC"), Defendant RNC's predecessor in interest, entered into a written license agreement ("1992 License Agreement") with Amurol Products Company ("Amurol") through which JBC licensed the use of trademarks for a shredded gum called Big League Chew. Complaint ¶ 12. In return, Amurol agreed to manufacture and sell Big League Chew products and agreed to pay JBC 6 percent of net sales of Big League Chew products, with a Guaranteed Minimum Royalty of $500,000.00 each year. *Id.* at ¶ 21.

    On January 1, 1992, USLA also entered into the 1992 Contract with JBC, through which JBC agreed to pay USLA a percentage of royalties received from Big League Chew products in consideration for USLA's "labor and services in connection with" prior license agreements between JBC and Amurol. *Id.* at ¶ 14. USLA was entitled to receive 1.5 percent of Amurol's net sales of Big League Chew products, or if Amurol did not achieve the Guaranteed Minimum Royalty, USLA was entitled to 23 percent of the difference between the Guaranteed Minimum Royalty and the actual royalties earned. *Id.* at ¶ 23.

    JBC subsequently assigned all of its rights, obligations and liabilities under the 1992 Contract and 1992 License Agreement to RNC, *id.* at ¶¶ 15, 16, and Wrigley subsequently

1

purchased Amurol, assuming all of Amurol's rights and obligations under the 1992 License Agreement. *Id.* at ¶ 17.

The 1992 Contract was scheduled to expire on December 31, 2011. *Id.* at ¶ 26.  In January 2010, Wrigley notified RNC that it did not intend to renew the 1992 License Agreement and wanted to terminate the 1992 License Agreement at the end of 2010 in exchange for payment of the 2011 Guaranteed Minimum Royalty. *Id.* at ¶ 28.  Instead, RNC waived its right to the 2011 Minimum Guaranteed Royalty and Wrigley agreed to sell the equipment it had used to manufacture Big League Chew Products to RNC pursuant to a termination agreement ("Termination Agreement") entered into on July 28, 2010. *Id.* at ¶¶ 30-32.

The 1992 Contract, 1992 License Agreement and the Termination Agreement explicitly state that the agreements should be construed under the laws of the state of New York. Feureisen Decl., Ex. B 1992 Contract ¶ 7; Feureisen Decl., Ex. A 1992 License Agreement ¶ 31; Feureisen Decl., Ex. G Termination Agreement ¶ 10(c).

## II. LEGAL STANDARD

According to the Supreme Court's most recent pronouncements, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The requirement that the court accept all factual allegations as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 1950.

At the motion to dismiss stage, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.* 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citation omitted) (affirming district court's consideration of contracts referenced in the complaint on a motion to dismiss).

New York rules govern choice-of-law questions in diversity actions in this Court. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941).   Under New York law, "a contractual choice-of-law provision is generally binding on a party claiming rights under a contract." *CIH*

2

*Intern. Holdings, LLC v. BT United States, LLC*, No. 10 Civ. 7790, 2011 WL 4483983, at *4 (S.D.N.Y. Sept. 28, 2011) (citing *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (relying on New York Contract law to resolve the issues raised in the case).

While the court must "draw all reasonable inferences" in the non-movant's favor *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007), it need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

### III. DISCUSSION

**A. The Motion to Dismiss is Denied as to the First Cause of Action**

USLA's first cause of action alleges that RNC breached the 1992 Contract with USLA by waiving the 2011 Minimum Guaranteed Royalty and by failing to pay USLA the greater of 23 percent of the 2011 Minimum Guaranteed Royalty or 23 percent of the valuable consideration that Wrigley gave RNC for RNC's promise to waive the 2011 Minimum Guaranteed Royalty. Paragraph 11 of the 1992 Contract reads:

> 11. Notwithstanding anything contained herein to the contrary, in the event of any amendment, modification, extension, renewal and/or an agreement between JBC and LICENSEE and/or their respective successors and assigns, entered into in substitution of the License Agreement between JBC and LICENSEE, and regardless of the prior termination or expiration of the term of said License Agreement, USLA shall nonetheless continue to be entitled to receive a percentage of advances, royalties and Guaranteed Minimum Royalties or other consideration received by JBC and/or its successors and assigns from LICENSEE and/or its successors and assigns with respect to each such amendment, modification, renewal and/or substitution of said License Agreement . . .

Feureisen Decl. Ex. B, 1992 Contract ¶ 11.

USLA concedes that the Termination Agreement between Wrigley and RNC was not a modification, but argues instead that it was "an agreement 'entered into in substitution' of the License Agreement." Pl.'s Opp. 6. RNC first argues that "the 1992 Contract ***does not*** entitle USLA to share in the consideration for any generic substitution of the 1992 License Agreement, but only for ***certain types*** of substitution agreements . . . to the 1992 License Agreement." Def.'s Reply 3-4. The text of Paragraph 11, however, indicates the parties' clear intention that any substitute agreement would suffice: the paragraph quoted by RNC lists certain types of substitution agreements for which USLA would be entitled to consideration payments, including any "amendment," "modification," "extension," or

3

"renewal" but also provides that USLA would be entitled to consideration payments for a generic "agreement" entered into in substitution of the 1992 License Agreement. Further, the paragraph states that USLA shall continue to be entitled to the Guaranteed Minimum Royalties or other consideration "with respect to each such amendment, modification, renewal and/or substitution of said License Agreement," Feureisen Decl. Ex. B, 1992 Contract ¶ 11, again indicating that a generic substitution would suffice.

RNC's second argument is that that the Termination Agreement was not a substitution to the 1992 Agreement. Def.'s Reply 4. This argument rests on the distinction between the common law contract terms of a "substitution agreement," and an "executory accord" or "accord and satisfaction." A substitution agreement discharges the original agreement and replaces it with a new one that is executory, but "will immediately discharge the existing obligation." *Denburg v. Parker Chapin Flattau & Kimpl*, 82 N.Y.2d 375, 384 (1993). In contrast, an "accord and satisfaction" or an "executory accord" is one in which the "obligee does not intend to discharge the existing claim merely upon the making of the accord." *Id.* at 383. The presumption in determining whether a contract is a substitution agreement or an executory accord is that "one does not surrender an existing obligation for a promise to perform in the future. . . ." *EFCO Corp. v. Liberty Mut. Ins. Co.,* 897 N.Y.S.2d 669 (Sup. Ct. 2009) (quoting *Albee Truck Inc. v. Halpin Fire Equipment Inc.*, 615 N.Y.S.2d 118, 120 (App. Div. 1994)). RNC is correct that the language of the Termination Agreement indicates a clear intent that the agreement is an executory accord: the Termination Agreement states that the 1992 License Agreement is terminated "[u]pon satisfaction of the conditions herein," not at execution. Feureisen Decl. Ex. G, Termination Agreement ¶ 1(a).

Nonetheless, the language of the 1992 Agreement does not foreclose the possibility that an executory accord, such as the termination agreement, falls into the general category of an agreement entered into "in substitution of" the Licensing Agreement under Paragraph 11 of the 1992 Contract. Courts often speak of executory accords as agreements that "substitute" for prior contracts, making clear that there is a legal meaning of the term "substitution agreement" and a different, more general meaning of the word "substitute." *See, e.g.*, *Gibbs v. Moore*, 848 N.Y.S.2d 266, 267 (App. Div. 2007) ("The documents submitted by the defendant in support of his motion established the existence of an accord and satisfaction by way of a substituted agreement."); *see also Shipsview Corp. v. Beeche*

4

*Systems Corp.*, 125 F.3d 844, 844 (2d Cir. 1997) ("In an accord and satisfaction, an obligor agrees to provide a performance different from that required, or allegedly required, of him by the contract, and the obligee agrees to accept the substituted performance in satisfaction of the obligor's existing duty."); *U.S. ex rel. Veltz v. Allegany Rehabilitation Associates, Inc.*, No. 01 Civ. 190S, 2011 WL 1042194, at *4 (W.D.N.Y. March 18, 2011) (" 'An accord and satisfaction is a method of discharging a contract or settling a cause of action arising from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement.' ") (quoting *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1279-80 (E.D.N.Y.1995)).

There is no clear intention in the 1992 Contract to curtail USLA's right to receive consideration for an executory accord that was "substituted" for the Licensing Agreement, but not for a substitution agreement. It is plausible to read Paragraph 11 of the 1992 Contract as permitting USLA to receive consideration for an executory agreement entered into "in substitution of" the licensing agreement. If this is the correct reading, USLA would be entitled to its 23 percent share of "other consideration" received by RNC. Because this reading is plausible, it would be inappropriate to resolve the ambiguity in the contract at the motion to dismiss stage. *See Zuckerwise v. Sorceron Inc.*, 735 N.Y.S.2d 100, 114-15 (N.Y. App. Div. 2001) ("[A]t the very least, the contract is ambiguous and cannot be construed as a matter of law on the instant motion to dismiss."); *see also TufAmerica, Inc. v. Orchard Enterprises, Inc.*, No. 11 Civ. 181620, 2011 WL 4946663, at *3 (S.D.N.Y. Oct. 14, 2011) ("[A] motion to dismiss should not be granted where the contract leaves doubt as to the parties' intent.") (internal citation and quotation marks omitted). Defendant's motion to dismiss as to Count 1 is denied.[1]

**B. The Motion to Dismiss is Granted as to the Second Cause of Action**

USLA's second cause of action alleges that RNC underpaid plaintiff under the terms of the 1992 Contract for USLA's share of royalties through 2011 and that this constitutes a breach of the 1992 Contract. In a Rule 12(b)(6) motion, the standard is that the complaint must allege a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at

---

[1] RNC also relies on Paragraph 13 of the contract to argue that USLA is not entitled to any of the consideration received from Wrigley; however, that provision is clearly inapplicable to the situation here. That paragraph states: "In the event of a termination or expiration of the License Agreement and in the further event JBC grants a license under the TRADEMARK to a third party that is not in privity with LICENSEE, USLA acknowledges that it will have no rights to share in any royalties, compensation or monies received by JBC from such third party." Feureisen Decl., Ex. B 1992 Contract ¶ 13. USLA does not claim that it is entitled to royalties from the contract that JBC has entered with a new, third party manufacturer and so this argument fails.

555 (quoting Fed. R. Civ. P. 8(a)(2)). However, "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

RNC is correct that the complaint provides no facts to indicate that there was any underpayment. Def.'s Reply 8. The only facts that USLA was ever underpaid come from an exhibit and statements submitted in connection with USLA's opposition to the motion to dismiss, where USLA states that "RNC informed USLA that RNC had underpaid USLA $13,300.00 in royalties for 2010 under the 1992 contract. . ." Pl.'s Opp. 12; Feureisen Decl., Ex. I Letter from Pokotilow to Feureisen. As a result, USLA argues, "It is more than reasonable to infer that RNC has underpaid USLA under the terms of the 1992 Contract for the years prior to 2010." Pl.'s Opp. 12-13.

Exhibit I to the Feureisen Declaration and the facts first raised in USLA's Opposition to the motion to dismiss are not properly considered in deciding this motion to dismiss. In *Chambers*, the Second Circuit explained that "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." 282 F.3d at 154 (holding that the district court erred by reviewing matters outside the pleadings that were not relied on by the complaint). Exhibit I to the Feureisen Declaration is not referenced in the complaint nor does the complaint indicate that USLA "relied on" this document in drafting the complaint.

The allegations in the complaint on this cause of action are "mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. The complaint states: "RNC has underpaid USLA under the terms of the 1992 Contract for plaintiff USLA's share of royalties through 2011, despite defendant RNC's false assurances to the contrary." Complaint ¶ 48.[2] These allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. USLA's Second Cause of Action is dismissed.

The Federal Rules of Civil Procedure provide that leave to amend should be "granted freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts should deny leave to amend when a claim is "clearly frivolous or legally insufficient on its face." *Ruiz v. Suffolk County Sheriff's Dep't*, No. 03 Civ. 3545, 2008 WL 4516222, at *2 (E.D.N.Y. Oct. 2, 2008) (citing *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 138 (E.D.N.Y. 1998)). USLA's complaint is not clearly frivolous or legally insufficient because were USLA to provide facts indicating that they had been underpaid,

---

[2] In any event, even were I to consider these documents, these factual allegations would not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and USLA cannot save this cause of action by arguing that after discovery, it will be able to plausibly state a claim. *See Hill v. Philip Morris USA*, No. 03 Civ. 6922, 2004 WL 1065548, at *7 (S.D.N.Y. May 11, 2004) ("[I]t is not sufficient to say that appropriate allegations to plead a sufficient cause of action will be made after pre-trial discovery."). The only facts apparent in Exhibit I to the Feureisen Declaration are that RNC acknowledged that it had made an accounting error, underpaying USLA in 2010, and was correcting it. This fact alone does not suggest that RNC underpaid USLA prior to 2010.

6

USLA would sufficiently plead a second breach of contract claim. Therefore, this Court grants USLA leave to file a second amended complaint with respect to this claim only.

### C. The Motion to Dismiss is Granted as to the Third Cause of Action

USLA's third cause of action alleges that RNC breached the implied covenant of good faith and fair dealing in the 1992 Contract by waiving the 2011 Guaranteed Minimum Royalty in order to negotiate the purchase of the Big League Chew equipment, materials and other valuable assistance from Wrigley. RNC argues that "[e]ven if there is no express contractual provision on point, the implied covenant of good faith and fair dealing prevents RNC's scheme to avoid paying USLA its share of the 2011 Guaranteed Minimum Royalties." Pl.'s Opp. 11.

Courts dismiss claims of breach of the covenant of good faith and fair dealing where they are duplicative of breach of contract claims. *See Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 894 N.Y.S. 2d 47, 49-50 (N.Y. App. Div. 2010) (upholding dismissal of claim of breach of the covenant of good faith and fair dealing as "duplicative of the breach-of-contract claim" because "both claims arise from the same facts and seek the identical damages for each alleged breach") (internal citations omitted); *see also Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) ("A claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of a covenant of an express provision of the underlying contract.") (quoting *Harris v. Provident Life & Accident Ins. Co.* 310 F.3d 73, 80 (2d Cir. 2002)). Because USLA's Third Cause of Action relies on the exact same facts and seeks the exact same damages as the First Cause of Action for breach of contract, the Third Cause of Action is dismissed as duplicative and leave to amend as to this cause of action is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED as to the Amended Complaint's First Cause of Action and is GRANTED as to the Amended Complaint's Second and Third Causes of Action. Leave to Amend within 20 days is granted as to the Second Cause of Action only. The Clerk of the Court is instructed to close this motion and to change Defendant's name to The Rob Nelson Company in the case caption.

**SO ORDERED**
**November 28, 2011**
**New York, New York**

U.S.D.J.

7