UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
U.S. LICENSING ASSOCIATES, INC.,   :
                                                              :
     Plaintiff,                                   :
                                                              :      11 CV 4517 (HB)
              - against -                  :
                                                              :      OPINION &
THE ROB NELSON COMPANY,            :      ORDER
                                                              :
     Defendant.                             :
-----------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

        Plaintiff U.S. Licensing Associates, Inc. ("USLA") moves for reconsideration of this Court's April 26, 2012 Opinion and Order. That Order denied a motion for summary judgment brought by Defendant The Rob Nelson Company ("RNC") and denied USLA's cross-motion for partial summary judgment. USLA seeks reconsideration of the branches of the Order that barred USLA's first theory of damages and concluded that Paragraph 17 of the parties' 1992 Contract did not apply to the Termination Agreement. The background of this case is available in that Opinion and Order, *USLA v. RNC* (*USLA II*), No. 11 Civ. 4517, 2012 WL 1447165 (S.D.N.Y. Apr. 26, 2012), as well as my earlier opinion denying RNC's motion to dismiss the amended complaint, *USLA v. RNC* (*USLA I*), No. 11 Civ. 4517, 2011 WL 5910216 (S.D.N.Y. Nov. 28, 2011). Familiarity with both opinions is assumed. For the reasons that follow, USLA's request for reconsideration is GRANTED, and, upon reconsideration, my Opinion—as supplemented by this Opinion—remains the same. Reargument is unnecessary.

## LEGAL STANDARD

        A motion for reconsideration under Local Rule 6.3 is appropriate only where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (internal quotation marks and citation omitted). The Rule must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003). The purpose of this restrictive application is, among other things, "to ensure the finality of decisions." *Wiltshire v. Williams*, No. 10 Civ. 6947, 2012 WL 899383, at *2 (S.D.N.Y. Mar. 16, 2012) (internal quotation marks and citation omitted). The decision of whether to grant or deny a motion for reconsideration lies within the sound discretion of the district court.

*McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983); *Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 08 Civ. 5520, 2009 WL 1528513, at *1 (S.D.N.Y. June 1, 2009). A court may grant a motion for reconsideration "to correct a clear error or prevent manifest injustice." *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (quotation marks and citation omitted).

## DISCUSSION

**A. USLA's Damages**

Throughout this litigation, USLA's theories of damages have been thoroughly confused. In their motion for reconsideration, USLA argues that their "first theory of damages was erroneously dismissed on the basis that the termination of the license agreement and waiver of the guaranteed minimum royalty itself was not a breach." USLA Mem. 2. If USLA's first and third theories of damages are in fact based on identical theories of liability—something which was not clear to me in their earlier papers[1]—then the third theory encapsulates the first. The third theory seeks:

> [T]hirty-five percent of the value of any and all consideration received in connection with The Rob Nelson Company's waiver of the 2011 Guaranteed Minimum Royalty and the early Termination of the Big League Chew License Agreement, including but not limited to, the value of the equipment transferred to The Rob Nelson Company from WM. Wrigley Jr. Company and the value of the non-compete clause between The Rob Nelson Company and WM. Wrigley Jr. Company.[2]

Seymour Decl. Ex. K, Supp. Disclosures ¶ (C)3. The first theory of damages apparently seeks to value "any and all consideration" received by RNC at $530,000, and USLA can accomplish just that under their third theory of damages. *See, e.g.*, *Schonfeld v. Hilliard*, 218 F.3d 164, 178-82 (2d Cir. 2000); *Credit Suisse First Boston v. Utrecht-Am. Fin. Co.*, 84 A.D.3d 579, 580 (1st Dep't 2011) (explaining that if the "value cannot be readily discerned . . . the factfinder may determine a 'hypothetical market value' based on expert testimony, a recent sale price, the price at which the

---

[1] At best, this was ambiguous. I can find no mention in any of USLA's earlier submissions that these two damages theories are based on the same underlying theory of liability. Neither USLA's Supplemental Initial Disclosures nor their letter to the Court dated March 29, 2012 clarify this. However, re-reading these submissions, it appears that USLA did attempt to make this argument, albeit in an unclear manner. This ambiguity likely stemmed in part from the fact that through the summary judgment phase of this litigation, USLA was still speaking of RNC as having breached the 1992 Contract merely by having terminated it early. *See* USLA Opp. to MTD. 3.

[2] As explained in my earlier opinion and below, "23 percent" of the consideration is all that it is allowed under the Contract.

2

party offered to sell the asset, or the price offered in the contract").[3]  This is one method of valuing "any and all consideration" received by RNC; USLA has suggested two alternatives. *See* USLA Mem. 3 ("The only difference between USLA's first and third theories of damages are the empirical calculations used to value the consideration RNC received.").  My earlier opinion in no way precluded USLA from arguing this method of assessing the value of the consideration received.[4]  I fail to see what difference it makes if USLA argues these as two distinct damage theories rather than one theory with two different methods of calculating damages, when the theory of liability behind both the first and third damages theories is (apparently) identical.

**B. Paragraph 17**

USLA also argues that my earlier opinion misinterpreted Paragraph 17 by concluding that USLA was only entitled to receive 23 percent of any consideration received by RNC.  USLA argues that it is entitled to 35 percent based on Paragraph 17 of the 1992 Contract, which reads:

> In the event that the License Agreement is amended, modified, renewed and/or substituted therefor as provided in ¶ 11 hereof and the provisions of such License Agreement are so amended, modified renewed and/or substituted so that the royalty due from LICENSEE to JBC, or from and to their respective successors and assigns, is less than six and a half (6.5%) percent of LICENSEE's net sales, then and in such event, USLA shall be entitled to thirty five (35%) percent of any royalties and other consideration of every nature and kind paid by LICENSEE, its successors and assigns, to JBC, its successors and assigns, pursuant to such new agreement between JBC and LICENSEE.

Seymour Decl. Ex. B, 1992 Contract ¶ 17.

"Ambiguous language is that which suggests 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 174 (2d Cir. 2001) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.

---

[3] Although RNC believes that I should preclude USLA from arguing that the value of the consideration received was equal to at least the value of the Guaranteed Minimum Royalty, it fails to cite any contrary authority.  I see no reason why USLA cannot argue that $530,000 is a proxy, so to speak, for what RNC received.  RNC is obviously free to argue to the contrary.  *Schonfeld*, 218 F.3d at 179 ("Once a plaintiff has produced such evidence, the burden is on the defendant to demonstrate special circumstances which would negate [the relevance] of a prior arm's-length purchase price.") (internal quotations and citation omitted).

[4] RNC argues that I ought to wait to resolve the issue of whether it is appropriate to use $530,000 as an approximation for the value of the consideration RNC received until it is presented to me on a *motion in limine*.  RNC Opp. 3.  I see no reason not to resolve this now.

1997)). "[T]he meaning of an ambiguous contract is a question of fact for a factfinder." *Scholastic, Inc. v. Harris*, 259 F.3d 73, 82 (2d Cir. 2001) (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)).

This provision is not ambiguous. Reading the contract as a whole, it is clear that Paragraph 17 applies to a particular subset of new or modified agreements that RNC and Wrigley might have entered into while Paragraph 11 applies more broadly. Paragraph 11, which is placed earlier in the 1992 Contract, speaks of "any amendment, modification, extension, renewal and/or an agreement" while Paragraph 17 describes altering or entering into a new or revised License Agreement. If, as USLA believes, Paragraph 17 applies to termination agreements rather than being limited to new license agreements, the results are nonsensical: Paragraph 17 applies where the royalty due from Wrigley to RNC is less than 6.5 percent of Wrigley's net sales. In the case of the Termination Agreement, as of the Termination Date, Wrigley's net sales are zero and the royalty due is also zero, so the royalty due to Wrigley is not "less than" 6.5 percent of net sales—it is equal to net sales. Feureisen Decl. Ex. G, Termination Agreement ¶¶ 1, 2. This further confirms that Paragraph 17 simply does not apply here.[5]

## CONCLUSION

I have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, USLA's request for reconsideration is GRANTED. This Opinion and Order amends and modifies the April 26, 2012 Order to the extent set out above. The Clerk of Court is directed to close the motion and remove it from my docket.

**SO ORDERED**

June 19, 2012

Hon. Harold Baer, Jr.
U.S.D.J.

---

[5] Again, USLA misunderstands or misreads Paragraph 17, writing that "The Termination Agreement unequivocally reduces the amount of royalties due to RNC to zero (0) percent of Wrigley's net sales. Zero is less than 6.5 percent. Therefore, paragraph 17 is applicable." USLA Mem. 8. Although I am certainly no mathematician, I understand that zero is less than 6.5 percent. That simply is not the issue. The question is whether zero (the amount of royalties to which RNC is entitled under the Termination Agreement) is less than 6.5 percent of zero (net sales following the Termination Agreement). As I can find no way in which zero could be "less than" zero, Paragraph 17 is not applicable.

4